IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WILLIAM AND DIANA EWING, | 2:11-cv-968-SU |
| Plaintiffs, | FINDINGS AND RECOMMENDATION |
| v. | |
| COUNTRY MUTUAL INSURANCE COMPANY, a foreign corporation and DOES 1-100, | |
| Defendant. | |

SULLIVAN, Magistrate Judge:

Page 1 – FINDINGS AND RECOMMENDATION

FINDINGS AND RECOMMENDATION

Plaintiffs William and Diana Ewing, Oregon residents, filed a Complaint against Country Mutual Insurance Company, an Illinois Corporation, in Oregon state court. Defendant removed the action to this court based on diversity of citizenship in conformity with 28 U.S.C. § 1332. Plaintiffs then filed the First Amended Complaint ("Amended Complaint"). Plaintiffs filed an Amended Complaint alleging four claims for relief: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) declaratory relief, and (4) fraud. (Pls' Am. Compl.) Pursuant to Fed. R. Civ. P 12(b)(6), defendant moves to dismiss all claims set forth in plaintiffs' Amended Complaint. In the alternative, defendant moves to dismiss certain portions of plaintiffs' Amended Complaint for failure to state claims upon which relief can be granted and for failure to plead damages as follows:

1) Plaintiffs' first claim for relief for breach of contract, paragraph 26 of plaintiffs' Amended Complaint;

2) Plaintiffs' second claim for relief for breach of the covenant of good faith and fair dealing, paragraphs 28, 29, 30, 31, and 32 of the Amended Complaint;

3) Plaintiffs' third claim for relief seeking declaratory relief, paragraphs 33, 34, 35, 36, and 37 of the Amended Complaint; and

4) Plaintiffs' fourth claim for relief for fraud, paragraphs 38, 39, 40, 41, 42, 43, and 44 of the Amended Complaint.

Based on the Amended Complaint and briefing filed by the parties, defendant's motion should be granted, in part, and denied, in part.

Page 2 – FINDING AND RECOMMENDATION

BACKGROUND

Plaintiffs Diana and William Ewing and defendant Country Mutual Insurance Company entered into a contract ("the Contract") on December 23, 2009, pursuant to which defendant insured all of plaintiffs' personal property. (Pls' Am. Compl. ¶ 4.) The Contract insured the property from loss due to fire, including during the transportation of the personal property. (Pls' Am. Compl. ¶ 4(a).) The Contract provides that, in the event of loss due to fire, plaintiffs may choose one of two methods of replacement: (1) plaintiffs may replace the lost items within one year of the loss and receive from defendant the actual cost of replacement; or (2) plaintiffs may accept payment from defendant of the "actual cash value" of the property, a value equal to the cost to repair or replace the item, less depreciation. (Pls' Am. Compl. ¶ 4(b)-(d).) If plaintiffs chose to accept the actual cash value, the Contract required defendant to calculate depreciation, taking into consideration "wear and tear, deterioration, obsolescence, age, physical condition and reduced market value of the property." Daniel E. Thenell Decl. Ex. A at 2, Nov. 14, 2011.[1] The policy also states that "[a]ny terms of this policy which are in conflict with the statutes of the state in which this policy is issued are amended to conform to such statutes." (*Id.* at 33 ¶ J.)

On June 30, 2010, while plaintiffs were moving to a new residence, a fire in the moving van destroyed all of plaintiffs' personal property. (Pls' Am. Compl. ¶ 5.) The parties agree that plaintiffs' property was insured when the fire occurred. Def.'s Mem. Supp. Dismiss 6. At a time prior to October 6, 2010, plaintiffs and defendant agreed that the replacement cost of the property

---

[1] While plaintiffs refer to the Contract in their Amended Complaint, they did not attach it as an exhibit. Defendant attached the Contract to the Declaration supporting its Motion. Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the complaint, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. *In re Stac Electronic Securities Litigation*, 89 F.3d 1399 (9th Cir. 1996); *Chavez v. United Mortg. Services, Inc.*, Civ. No. 09-285-AC, 2009 WL 4505439 (D.Or. 2009).

Page 3 – FINDINGS AND RECOMMENDATION

was $181,617.63. (Pls' Am. Compl. ¶ 5.)  Defendant later reduced the value of the property to approximately $74,000 after accounting for depreciation. (Pls' Am. Compl. ¶ 7.)  Plaintiffs rejected the valuation, believing that defendant had calculated depreciation at an unreasonably high depreciation rate.   (Pls' Am. Compl. ¶¶ 7 – 9, 11.)

On May 4, 2011, plaintiffs requested that defendant extend the one-year deadline for purchasing replacement property until March 31, 2012.  (Pls' Am. Compl. ¶ 11.)  Plaintiffs contended that severe health issues, as well as defendant's continued refusal to provide depreciation information, hindered their ability to decide whether to purchase replacement property.  (Pls' Am. Compl. ¶ 11.)  Defendant rejected plaintiffs' request, and the deadline by which plaintiffs had to purchase replacement property remained June 30, 2011.[2]  (Pls' Am. Compl. ¶ 11.)

Plaintiffs allege that defendant failed to consider the actual condition of the destroyed property.  (Pls' Am. Compl. ¶ 9.)  Rather, plaintiffs contend that defendant used a cost containment computer program to calculate depreciation, resulting in claim reductions that bear no relation to the true condition of the personal property.  (Pls' Am. Compl. ¶ 9.)  Plaintiffs Amended Complaint further alleges that Oregon's Unfair Claims Settlement Procedures Act ("UCSPA"), Or. Rev. Stat. § 746.230, obliges insurers to comport with specific requirements, and that these requirements are implied terms of the Contract.   (Pls' Am. Compl. ¶¶ 14 – 17, 19; *see also* Or. Rev. Stat. §§ 764.230 (1)(b)-(d), (m).)  In addition, plaintiffs allege that defendant knew of its obligations under UCSPA and intentionally evaded these requirements.   (Pls' Am. Compl. ¶

---

[2] Plaintiffs' Amended Complaint states that defendant insisted that "all items be purchased one year from the date of loss or by June 30, 2012." (Pls.' Am. Compl. ¶ 11.)  However, as the date of loss was June 30, 2010, the deadline for purchasing replacement property was, in fact, June 30, 2011.

Page 4 – FINDINGS AND RECOMMENDATION

19.) They allege that defendant intentionally hid its depreciation practices from plaintiffs so that defendant could, and did, claim that the actual condition of plaintiffs' property was reflected in the final valuation of property after depreciation was accounted for. (Pls' Am. Compl. ¶ 19.)

In addition to their breach of contract claim based on the express provisions of the Contract, plaintiffs allege that the UCSPA requires an insurer to:

> (a) acknowledge and act promptly upon communications relating to claims;
> (b) adopt and implement reasonable standards for the prompt investigation of claims;
> (c) conduct a reasonable investigation based on all available information in settling claims; and
> (d) provide the proper explanation of the basis relied on in the insurance policy in relation to the facts or applicable law for the denial of a claim.

(Pls.' Am. Compl. ¶¶ 14-17, 26 (d)-(g); *see also* Or. Rev. Stat. § 764.230 (1)(b)-(d), (m).)

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss will be granted where plaintiff fails to state a claim upon which relief may be granted. To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purpose of a motion to dismiss, the court must accept as true all of the factual allegations in the complaint and must draw all reasonable inferences in the non-moving party's favor. *Ashcroft v. Iqubal*, 129 S.Ct. 1937, 1949 (2009). However, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft*, 129 S.Ct. at 1949, 1951.

DISCUSSION

I.     Breach of Contract

Defendant contends that plaintiffs have failed to sufficiently plead a breach of contract. To state a *prima facie* claim for breach of contract under Oregon law, a complaint must allege (1) the existence of a contract; (2) its relevant terms; (3) plaintiff's full performance and lack of breach; and (4) defendant's breach resulting in damage to plaintiff. *NW Natural Gas Co. v. Chase Gardens Inc.*, 333 Or. 304, 312-13 & n.3, 39 P.3d 846 (2002). Plaintiffs allege they entered into a written contract for insurance coverage with defendant on December 23, 2009. (Pls' Am. Compl. ¶¶ 4, 24.) Plaintiffs also allege they have fully performed all conditions under the Contract and that they are in full compliance with its terms. (Pls' Am. Compl. ¶¶ 21, 25.)

Plaintiffs further allege defendant had specific obligations under the terms of the Contract, and defendant failed to satisfy these obligations. Plaintiffs allege defendant breached the Contract by failing to: (1) pay the actual cash value of plaintiffs' claim; (2) properly determine and apply depreciation to the claim, and (3) take into account the condition of the personal property when applying depreciation. (Pls' Am. Compl. ¶ 26.)

In support of their allegations, plaintiffs cite the Contract provision that requires defendant to "consider wear and tear, deterioration, obsolescence, age, physical condition, and reduced market value of the property" when determining depreciation of a covered loss. (Pls' Am. Compl. ¶ 4(c); Thenell Decl. Ex. A at 2.) In addition, plaintiffs allege defendant's breach resulted in actual financial loss and damage to the plaintiff. (Pls' Am. Compl. ¶ 27.) They allege defendant's arbitrary calculation in determining depreciation reduced the value of their claim and deprived them of their contractual right to receive the actual cash value of their claim. (Pls' Am.

Page 6 – FINDINGS AND RECOMMENDATION

Compl. ¶¶ 18, 20, 26(a).)   In so doing, plaintiffs have alleged relevant terms of the contract that impose certain obligations on the defendant; they have alleged that defendant has not performed those obligations; and they have alleged they were damaged by defendant's breach.

Defendant argues plaintiffs base their breach of contract claim on violations of Oregon's UCSPA, rather than on the terms of the Contract.  (Def.'s Mem. Dismiss 7.)   Defendant argues the UCSPA provides no private right of action for alleged violations, and therefore plaintiffs' claim for breach of contract is not actionable.   (Def.'s Mem. Dismiss 7.)

Contrary to defendant's assertion, , plaintiffs' breach of contract claim is not based solely on the UCSPA.  Rather, they filed a claim for breach of contract based on the terms of the Contract between the parties.   Plaintiffs assert two theories under which the UCSPA may be relevant.  First, plaintiffs contend that the statute's provisions are specifically incorporated into the Contract and that violations of the statute also support a claim for breach of contract.  (Pls.' Resp. 6-7.)   The Contract states that "[a]ny terms of this policy which are in conflict with the statutes of the state in which this policy is issued are amended to conform to such statutes." (Thenell Decl. Ex. A at 33 ¶ J.)   Plaintiffs argue that the defendants were therefore contractually obligated to act in accordance with the UCSPA.  (Pls.' Mem. Resp. 6-7.)   Utilizing the language of the UCSPA, plaintiffs specifically allege that defendant breached the contract by failing to:   (1) promptly communicate with plaintiffs regarding how defendant develops and applies depreciation factors; (2) adopt and implement reasonable standards for the prompt investigation of claims; (3) conduct a reasonable investigation; taking into consideration the actual condition of personal property when applying depreciation methods; and (4) provide an explanation for the depreciation factors the defendant in fact applies to plaintiffs' claim. (Pls' Am. Compl. ¶ 26 (d)-(g). By

Page 7 – FINDINGS AND RECOMMENDATION

failing to meet the requirements of the UCSPA, plaintiffs argue that defendant breached the terms of the Contract because the Contract specifically incorporates the UCSPA.  (Pls.' Resp 6-7; Pls' Am. Compl. ¶¶ 14-18.)

The plaintiff's second theory rests on the argument that the provisions of the UCSPA are implicit terms of this and every insurance contract.  (Pls.' Resp 9, 15.)  They argue that under Oregon case law, an insurer's violation of the UCSPA can form an independent basis of a breach of contract claim.  (Pls.' Resp 9, 15 (*citing Galencia-Orozco v. County Mut. Ins. Co.*, Civ. No. 09-1401-AC, 2010 WL 2507528 (D.Or. 2010)).)  In fact, that case determined only that conduct that gives rise to a violation of Or. Rev. Stat. § 746.230 may also give rise to a claim for breach of the covenant of good faith and fair dealing.  *Galencia-Orozco*, 2010 WL 2507528, at *2.  The court there noted plaintiff's assertion that failure to comply with the requirements of the Act constitutes a breach of the insurance policy itself was "not strictly correct under the law."  *Id*. at *3.

This court finds that allegations of violations of the UCSPA alone do not give rise to a claim for breach of contract.  Under the terms of the Contract, to the extent that any Contract provisions are in conflict with the UCSPA, the statutory provisions would be incorporated into the contract and provide the basis for a breach of contract claim.  (Thenell Decl. Ex. A at 33 J.)  Here, plaintiffs have not alleged a conflict between the Contract terms and the statutory provision.  Accordingly, plaintiffs' Amended Complaint fails to state a claim for breach of contract based upon violations of the UCSPA, and defendant's motion to dismiss paragraph 26 (d)-(g) should be granted.  Plaintiffs have, however, sufficiently pled a breach of contract claim based upon the terms of the Contract itself, and defendant's motion to dismiss in that claim should be denied.

Page 8 – FINDINGS AND RECOMMENDATION

II.     Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant moves to dismiss plaintiffs' second claim for relief on the grounds that plaintiffs have failed to state a claim for breach of the covenant of good faith and fair dealing. There is an "obligation of good faith in the performance and enforcement of every contract." *Best v. U.S. Nat'l Bank of Or.*, 303 Or. 557, 561, 739 P.2d 554, 557 (1987). Though a comprehensive definition of good faith is neither possible nor desirable, the Oregon Supreme Court has explained:

> When one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes. If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith.

*Id*. at 563. Thus, a properly pled claim for breach of the covenant of good faith and fair dealing must allege three things. First, plaintiff must allege defendant was given discretion in the performance of the contract. Second, plaintiff must allege the parties anticipated defendant's discretion to be exercised for a specific purpose. Finally, plaintiff must allege defendant exercised that discretion for a purpose contrary to the reasonable contractual expectations of the plaintiffs.

Defendant contends plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed for two reasons. First, defendant argues plaintiffs failed to allege what contractual provisions defendant has allegedly breached. (Def.'s Mem. Dismiss 8.) Second, defendant asserts plaintiffs' allegations are actually allegations of violations of the UCSPA, and therefore not actionable. (Def.'s Mem. Dismiss 9.)

Plaintiffs allege defendant had discretion under the terms of the Contract to apply depreciation to their claim. (Pls' Am. Compl. ¶ 4(c).) In this case, plaintiffs allege the Contract

Page 9 – FINDINGS AND RECOMMENDATION

requires the defendant to determine depreciation rates, taking into account the actual condition of the personal property.  (Pls' Am. Compl. ¶¶ 4(c), 19, 26(a)-(c), 30.)  Plaintiffs cite specific provisions of the Contract that require defendant to do so.  (Pls' Am. Compl. ¶ 4(c).)  Plaintiffs allege their contract expectations were not met in this regard.  Specifically, plaintiffs allege the Contract required defendant to individually evaluate the condition of each item of personal property contained in the claim, and defendants did not in fact exercise its discretion in this manner.  (Pls' Am. Compl. ¶¶ 18, 30, 31.)  Rather, according to plaintiffs, defendant used a "systematic, automatic set of depreciation rates" that reduced plaintiffs' claim arbitrarily.  (Pls' Am. Compl. ¶¶ 18, 30.)  Plaintiffs allege facts showing they reasonably expected defendant would evaluate their claim using reasonable depreciation factors to calculate the actual value of the covered loss.  Plaintiffs contend the covenant of good faith and fair dealing required defendant to disclose and explain its depreciation methods and extend the time for submitting their claim by the amount of time it refused to do so.  (Pls' Am. Compl. ¶ 30.)  Plaintiffs also claim defendant intentionally sought to deprive them of their right to receive the actual cash value of their claim.  (Pls' Am. Compl. ¶ 31.)  Plaintiffs sufficiently allege defendant acted in bad faith in exercising its discretion in the performance of the Contract.  (Pls' Am. Compl. ¶ 32.)

Defendant also argues plaintiffs' claim for breach of the covenant of good faith and fair dealing should fail because, in reality, it is a non-actionable claim under the UCSPA.  (Def.'s Mem. Dismiss 9.)  Plaintiffs, on the other hand, argue Or. Rev. Stat. § 746.230 imposes legally binding obligations on defendant, with which defendant failed to comply.  (Pls' Am. Compl. ¶ 14-17.)  In their Response, plaintiffs elaborate, arguing that the UCSPA may correctly form the basis for a claim for breach of the contractual obligation to act in good faith.  (Pls.' Mem. 9.)

Page 10 – FINDINGS AND RECOMMENDATION

Plaintiffs allege defendant violated four provisions of the UCSPA, and this conduct forms the basis of their claim for breach of the covenant of good faith and fair dealing. (Pls' Am. Compl. ¶¶ 14-17, 28.) Plaintiffs claim defendant is required under the UCSPA to: (1) acknowledge and act promptly upon communications relating to claims; (2) adopt and implement reasonable standards for the prompt investigation of claims; (3) conduct a reasonable investigation based on all available information; and (4) provide a proper explanation of the basis relied on in the insurance policy in relation to the facts or applicable law for the denial of a claim. (Pls' Am. Compl. ¶¶ 14-17; Or. Rev. Stat. §§ 746.230(1)(b)-(d), (m).) Defendant did none of these things, plaintiff argues, and thus breached its obligation of good faith and fair dealing. (Pls.' Resp. 18.)

While it is true that the provisions of the UCSPA are not independently actionable, Oregon courts have recognized that failing to comply with the Act's requirements may give rise to a claim for breach of the covenant of good faith and fair dealing. *See Ivanov v. Farmer's Ins. Co. of Or.*, 344 Or. 421, 185 P.3d 417 (2008); *Strawn v. Farmer's Ins. Co. of Or.*, 228 Or. App. 454, 209 P.3d 357 (2009). Recently, this court held that "[a]lthough the court is unwilling to conclude that violations of the Act are per se violations of the good faith obligation, it does conclude that the underlying conduct may give rise to such a claim." *Galencia-Orozco*, 2010 WL 2507528, *3. Plaintiffs argue, and this court agrees, that an insurer's conduct that violates the UCSPA may support a claim under the law of contracts for breach of the implied covenant of good faith and fair dealing, even though the Act itself does not provide a private right of action.

Plaintiffs' Amended Complaint contains factual allegations of defendant's conduct that state a claim for breach of the obligation of good faith and fair dealing, and defendant's motion to dismiss this claim should be denied.

Page 11 – FINDINGS AND RECOMMENDATION

III.     Declaratory Relief

Plaintiffs seek declaratory relief and request an order stating defendant breached the Contract by: (1) using a secret computer program to "automatically apply pre-determined depreciation factors" to claims; (2) refusing to extend the time period in which to replace destroyed items; and (3) failing to follow Or. Rev. Stat. § 746.230 when determining depreciation. (Pls' Am. Compl. ¶ 37.)

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201; *see* Or. Rev. Stat. §§ 28.010, 28.020. To state a claim for declaratory relief, plaintiff must allege facts showing a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).

Plaintiffs allege that a controversy exists and that "a dispute has arisen between plaintiffs and defendant" in regards to the application of depreciation on plaintiffs' insurance claim. (Pls' Am. Compl. ¶ 34.) They also allege a dispute over the time in which plaintiffs must replace personal property, and whether that time allotment should be extended. (Pls' Am. Compl. ¶ 35.) Finally, plaintiffs allege a dispute concerning whether and to what extent defendant is required to adhere to the requirements of Or. Rev. Stat. §§ 746.230 (b)-(d), and (m). (Pls' Am. Compl. ¶ 36.)

Defendant again takes issue with plaintiffs' reliance on the UCSPA and asks the court to strike paragraphs 36 and 37(c) from plaintiffs' Amended Complaint. (Def.'s Mem. Dismiss. 10.) Those paragraphs set forth plaintiffs' allegation that defendants are prohibited under the UCSPA from performing certain unfair claim settlement practices. (Pls' Am. Compl. ¶¶ 36, 37(c).)

Page 12 – FINDINGS AND RECOMMENDATION

Plaintiffs contend the statute has been specifically incorporated into the Contract.  (Pls.' Resp. 7.) Plaintiffs allege defendant did not comply with those requirements and defendant's actions violated the Contract.  (Pls' Am. Compl. ¶ 36.)  Defendant, on the other hand, argues the violations of the UCSPA are not independently actionable, and therefore this court cannot grant plaintiffs any relief.  (Def.'s Mem. Dismiss 10.)  For reasons previously stated, plaintiffs allege sufficient facts to plead a substantial controversy and that this controversy is actual and immediate.  For the purposes of a motion to dismiss, plaintiffs have met their burden.  Defendant's motion to dismiss this portion of plaintiffs' Amended Complaint, or alternatively to strike specific paragraphs, should be denied.

IV.     Fraud

Finally, defendant moves to dismiss on the grounds that plaintiffs' claim lacks the required specificity. To plead a *prima facie* claim for fraud under Oregon law, a plaintiff must allege "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that the representation should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury."  *Baringa v. JP Morgan Chase & Co.*, 749 F.Supp.2d 1164 (D. Or. 2010).  When a party alleges fraud, Fed. R. Civ. P. 9(b) requires that party to "state with particularity the circumstances constituting fraud[,]" while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.  9(b).  A plaintiff must do more than set forth the neutral facts that identify the purportedly false transaction.  *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th  Cir. 1994), *superseded by statute on other grounds*.  A plaintiff must identify the

Page 13 – FINDINGS AND RECOMMENDATION

allegedly false representations made by defendant, and explain why the statement or omission was false or misleading. *In re GlenFed*, 42 F.3d at 1548. Allegations of fraud must further set forth the who, what, when, where, and how of the allegedly false representations. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003), quoting *Cooper v. Picket*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). Additionally, the factual circumstances alleged must be specific enough to give defendant notice of the particular misconduct, thereby allowing defendant to prepare an adequate defense to the allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009).

Here, defendant asserts plaintiffs' fraud claim fails to meet the heightened pleading standards of Rule 9(b) because the Amended Complaint fails to state the circumstances - including the time, place, and manner - of fraud with particularity. (Def.'s Mem. Dismiss 11.) Defendant asserts plaintiffs have failed to point to any contractual promise or provision concerning depreciation, and have not stated with particularity what statement is false and how it is false. (Def.'s Mem. Dismiss 11.) Defendant further asserts that plaintiffs have not alleged facts suggesting who represented to them that Country Mutual Insurance would employ reasonable depreciation practices. (Def.'s Reply 5.) Defendant also argues plaintiffs have failed to specify when such a representation was made, where the representation took place, and the specific contents of the representation. (Def.'s Reply 5.) Finally, defendant argues plaintiffs have not stated their damages with sufficient particularity. (Def.'s Mem. Dismiss 12.)

Plaintiffs respond the factual allegations contained in the Amended Complaint, along with the terms of the Contract referred to in the Amended Complaint, are specific enough to state a claim for fraud. Plaintiffs allege defendant offered the Contract to plaintiffs, therein representing

Page 14 – FINDINGS AND RECOMMENDATION

that it would pay the actual cash value of property destroyed by fire.  (Pls' Am. Compl. ¶ 39; Thenell Decl. Ex. A at 2, 16, 21.)   Plaintiffs allege defendant represented to them in the terms of the Contract that, in determining the actual cash value of any destroyed property, defendant would "consider wear and tear, deterioration, obsolescence, age, physical condition and reduced market value."   (Pls' Am. Compl. ¶ 39; Thenell Decl. Ex. A at 2.)

Plaintiffs succinctly allege defendant's representation regarding its depreciation practices was false, that defendant knew its representation was false when the parties entered into the Contract, and that defendant knew at that time that it would instead employ a computer program that would reduce the value of the claim in a blanket manner.  (Pls' Am. Compl. ¶¶ 40-41.) Plaintiffs allege the false representations are contained in the Contract between these two parties, and occurred on the date they entered into the Contract, December 23, 2009.  (Pls' Am. Compl. ¶¶ 4, 39.)   Finally, plaintiffs allege the initial valuation of the claim was $181,517.63, and defendant reduced their claim by over $107,187 after accounting for depreciation.   (Pls' Am. Compl. ¶ 7.) Plaintiffs' Amended Complaint alleges defendants have not paid plaintiffs, resulting in damages to the plaintiffs.   (Pls' Am. Compl. ¶¶ 13, 44.)   These allegations are sufficient under Rule 9(b) to detail the circumstances which constitute fraud and put defendant on notice of the misrepresentations and conduct of which plaintiffs complain.

Defendant also asserts that plaintiffs failed to state with the requisite particularity how Country Mutual Insurance knew it representations were false.  (Def.'s Mem. Dismiss 11.) However, plaintiffs need not allege knowledge with particularity, as Rule 9(b) permits knowledge,

Page 15 – FINDINGS AND RECOMMENDATION

among other conditions of a person's mind, to be generally alleged.  Therefore, the general averment that defendant knew its representations were false is permissible under Rule 9(b)[4].

The facts alleged in the Amended Complaint meet the requirements of Rule 9(b).  The Amended Complaint alleges facts which are specific enough to notify defendant of the time, place, parties, content of the allegedly false representations, and afford County Mutual Insurance the ability to respond to the alleged misconduct.  Accordingly, defendant's motion to dismiss plaintiffs' claim for fraud should be denied.

## RECOMMENDATION

Defendant's motion to dismiss (doc. # 7) should be GRANTED, in part, and DENIED, in part.  Plaintiffs should have 60 days in which to amend their pleadings.

/
/
/
/
/
/

---

[4] Similarly, defendant also makes the argument that plaintiffs did not state with particularity why they believed they were justified in relying on defendant's representation, and how their reliance was reasonable.  (Def.'s Mem. Dismiss 12.)  Rule 9(b) does not require plaintiffs to state reasonable reliance with particularity.  To the extent that defendant's argument regarding reliance is relevant under the Federal rules for pleading fraud, plaintiffs have sufficiently alleged their right to rely on defendant's representation.  Plaintiffs have alleged that they relied on defendant's representation, and were justified in believing that their property would be valued using reasonable depreciation principles.  (Pls' First Am. Compl. ¶ 43.)

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due May 14, 2012. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 25th day of April, 2012.

      /s/ Patricia Sullivan_____
      Patricia Sullivan
      United States Magistrate Judge